1997-NMCA-074

943 P.2d 1042

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Vangie ARELLANO, Defendant–Appellee.**

**No. 16758.**

Court of Appeals of New Mexico.

May 12, 1997.

Certiorari Granted July 28, 1997.

Tom Udall, Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, for Plaintiff–Appellant.

T. Glenn Ellington, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Defendant–Appellee.

## OPINION

WECHSLER, Judge.

1. The State appeals from the district court decision granting Defendant's motion to dismiss the charge of criminal damage to property. The district court determined that Defendant could only have been charged under a specific statute, injuring or tampering with vehicle, NMSA 1978, Section 66–3–506 (Repl.Pamp.1994), and not under a general statute, criminal damage to property, NMSA 1978, Section 30–15–1 (Repl.Pamp.1994). We reverse because we conclude that the "general/specific rule" is inapplicable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. According to Defendant's attorney, Defendant returned to her residence after having fought fires throughout most of the summer and discovered two people living there. Defendant's husband had given them permission to stay at the house, and their employer had loaned them a pickup truck, which was parked in front of the house. The State was apparently ready to show that Defendant chased the two people away with an ax and then caused damage in excess of $1000 by hitting the pickup truck with the ax, breaking the windows, windshield, and headlights and also damaging the engine.

## II. DISCUSSION

### A. Standard of Review

3. Construction of a statute is a question of law reviewed de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). The fundamental principle of statutory interpretation is that the court must ascertain and give effect to the legislative intent. *See Cummings v. X–Ray Assocs.*, 121 N.M. 821, 834, 918 P.2d 1321, 1334 (1996); *State v. Chavez*, 77 N.M. 79, 82, 419 P.2d 456, 457 (1966).

### B. The General/Specific Rule

4. Under the general/specific rule, when one statute deals with a subject in general and comprehensive terms and another deals with part of the same subject in a more minute and definite way, the latter controls if the two cannot be harmonized. *State v. Blevins*, 40 N.M. 367, 368, 60 P.2d 208, 209 (1936); *see State v. Yarborough*, 122 N.M. 596, 605, 930 P.2d 131, 140 (1996). If there is a specific statute addressing the conduct at issue, the state is ordinarily required to prosecute under that statute rather than under the general statute. *Blevins*, 40 N.M. at 369, 60 P.2d at 210; *see Yarborough*, 122 N.M. at 605, 930 P.2d at 140.

5. The "rule" that a specific, or special, statute controls over a general statute is a principle of statutory interpretation. *See Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990); *State v. Hol-*

*lenbeck,* 112 N.M. 275, 277, 814 P.2d 143, 145 (Ct.App.1991); 2B Norman J. Singer, *Sutherland Statutory Construction* §§ 51.01, 51.05 (5th ed. 1992). The purpose of this principle is to implement the intent of the legislature. *See State v. Mirabal,* 108 N.M. 749, 751, 779 P.2d 126, 128 (Ct.App.1989); 2B Singer, *supra,* § 51.05. The question is whether the legislature intended to "preempt the field" and cover the whole subject matter by enacting a specific statute. *See Yarborough,* 122 N.M. at 606, 930 P.2d at 141. The general/specific rule is therefore not an inexorable command to be mechanically applied, but a principle to employ when it aids in reaching a reasonable interpretation of the legislature's intention. *Compare State v. Williams,* 250 Kan. 730, 829 P.2d 892, 897 (1992) (application of general/specific rule consistent with legislative intent), *with State v. Helms,* 242 Kan. 511, 748 P.2d 425, 427 (1988) (general/specific rule inapplicable because inconsistent with reasonable legislative intent).

6. The theory of the general/specific rule is that, if the specific statute was enacted later, it was intended to carve out an exception to the general statute; if the specific statute was enacted earlier, it was intended to remain an exception unless it was repealed in general words or by implication. 2B Singer, *supra,* § 51.05; *see Stinbrink,* 111 N.M. at 182, 803 P.2d at 667. The statute prohibiting injuring or tampering with a vehicle was first enacted in 1953 as NMSA 1941, § 68–2053 (Supp.1953). *See* 1953 N.M.Laws, ch. 138, § 91. Section 68–2053 is virtually identical to the current Section 66–3–506. The statute prohibiting criminal damage to property was enacted in 1963 as NMSA 1953, Repl.Vol. 6 (1964), § 40A–15–1, which is identical to the current Section 30–15–1. *See* 1963 N.M.Laws, ch. 303, § 15–1.

7. The district court held that Section 66–3–506 is a specific statute because it deals with motor vehicles, while Section 30–15–1 is a general statute dealing with damage to any real or personal property. The district court's analysis appears reasonable when we consider a case of minor damage to a motor vehicle. Damage of $1000 or less would be only a petty misdemeanor if Section 30–15–1

applied; such damage would be a misdemeanor under Section 66–3–506. A plausible argument can be made that the legislature, in enacting a general statute, Section 30–15–1, intended that Section 66–3–506 would remain as an exception to the general statute, thus providing a greater penalty for minor damage to a motor vehicle than for minor damage to other types of property.

 8. Nevertheless, we do not follow the district court's lead. The general/specific rule is inapplicable in the case on appeal because Section 30–15–1 does not "include the same matter" as Section 66–3–506. *Blevins*, 40 N.M. at 367, 368, 60 P.2d at 209. In *State v. Ibn Omar–Muhammad*, 102 N.M. 274, 277–78, 694 P.2d 922, 925–26 (1985), the Court stated that a general statute must include the same matter as a specific statute and established that if, under the *Blockburger* test, each statute includes an element that the other does not, the general/specific rule is inapplicable. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *State v. Whitaker*, 110 N.M. 486, 488–89, 797 P.2d 275, 277–78 (Ct.App.1990). For a conviction under Section 66–3–506(D), the State must prove that the property damaged was a motor vehicle. For a fourth degree felony conviction under Section 30–15–1, the State must prove that the amount of damage exceeded $1000; the applicable uniform jury instruction requires including, as an element, that "[t]he amount of damage to the property was more than $1000.00." UJI 14–1501 NMRA 1997. Although Defendant argues that the existence of a "value structure" in Section 30–15–1 is insignificant, we disagree because the damage amount becomes an element of the offense when a felony is charged. Since each statute includes an element that the other does not, the general/specific rule is inapplicable. *See Ibn Omar–Muhammad*, 102 N.M. at 278, 694 P.2d at 926.

9. One obvious reason that the general/specific rule is inapplicable when each offense contains an element that the other does not is that it can be problematic which statute is the specific and which is the general. We have that problem here. Most subsections of Section 66–3–506 do not even require

any actual damage to have resulted. For instance, under Section 66–3–506(B) it is a misdemeanor to shift the gears of a standing motor vehicle whether or not any damage results. Section 66–3–506 thus covers instances in which no damage is done while Section 30–15–1 applies only if damage results; Section 66–3–506 covers only motor vehicles while Section 30–15–1 covers any real or personal property. Therefore, Section 30–15–1 is more general in the sense that it applies to damage to any type of property, while Section 66–3–506 is more general in the sense that it applies whether or not any damage results. On the other hand, Section 30–15–1 is more specific in distinguishing between different amounts of damage, while Section 66–3–506 is more specific in dealing only with motor vehicles. It is therefore not possible to consistently characterize one statute as general and the other as specific. *See State v. Liberty Nat'l Bank & Trust Co.*, 427 N.W.2d 307, 315–16 (N.D. 1988) (when two statutes have conflicting general and special features so that determining legislative intent is impossible, North Dakota's codified general/specific rule, N.D.Cent.Code § 1–02–07 (1987), is inapplicable).

 10. We believe that a reasonable interpretation of Section 66–3–506 and Section 30–15–1 is that they are intended to be complementary rather than general and specific statutes. *Cf. United States v. Batchelder*, 442 U.S. 114, 119–20, 99 S.Ct. 2198, 2201–02, 60 L.Ed.2d 755 (1979) (Congress intended to enact two independent and complementary gun control statutes). A court should not strain to apply the general/specific rule in every instance in which there is some overlap between statutes. Although we agree with the result reached in *State v. Martinez*, 91 N.M. 804, 581 P.2d 1299 (Ct. App.1978), we question whether its reasoning would survive *Ibn Omar–Muhammad*.

11. When we consider a case involving major damage, the district court's analysis is no longer plausible. Criminal damage in excess of $1000 to a motor vehicle would still be a misdemeanor if Section 66–3–506 applied; in contrast, criminal damage over $1000 to other real or personal property would be a

fourth degree felony under Section 30–15–1. We do not think it is reasonable to conclude that the legislature intended to provide a lesser penalty for damage over $1000 because the property damaged is a motor vehicle. This result is unreasonable and absurd. *See Rowell,* 121 N.M. at 114, 908 P.2d at 1382.

12. Our approach is buttressed by comparison with NMSA 1978, Section 30–15–4 (Repl.Pamp.1994). That section provides that willfully, maliciously and intentionally defacing any portion of a church is a misdemeanor when the damage is $1000 or less, and a fourth degree felony when the damage is over $1000. If the general statute, criminal damage to property, applied, damage of $1000 or less would be only a petty misdemeanor; damage over $1000 would again be a fourth degree felony. The legislature could reasonably have intended to provide a greater penalty for minor damage to a church than for minor damage to other property, but the same penalty for major damage. *See State v. Vogenthaler,* 89 N.M. 150, 152–53, 548 P.2d 112, 114–15 (Ct.App.1976). Because Section 30–15–4 addresses both minor and major damage and provides penalties for both, it is reasonable to conclude that the legislature intended to preempt the field, covering the whole subject matter, and to establish Section 30–15–4 as the exclusive means of prosecution for damage to a church. *Cf. Yarborough,* 122 N.M. at 606, 930 P.2d at 141 (a specific statute is intended to preempt the field and cover whole subject matter). Section 66–3–506, however, does not address the subject of major damage to motor vehicles. Because it does not, we are led to the conclusion that the legislature did not intend Section 66–3–506 to preempt the field and fully cover the subject matter of damage to motor vehicles.

13. We conclude that the legislature did not intend Section 66–3–506 to provide the exclusive means of prosecution when a motor vehicle is involved. There are many instances in which a defendant's conduct may constitute a violation of more than one statute. *See e.g., Swafford v. State,* 112 N.M. 3, 15, 810 P.2d 1223, 1235 (1991) (defendant guilty of both incest and criminal sexual penetration for same conduct). Although such circumstances may lead to a double jeopardy violation if the defendant is convicted under more than one statute, the mere existence of alternative means of prosecution is not per se impermissible. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The relevant question is again one of legislative intent. *Cf. id.* at 9, 810 P.2d at 1229 (no double jeopardy problem if legislature intended to authorize multiple punishment).

**C. Equal Protection**

14. Defendant argues, however, that prosecutorial discretion to charge her under either Section 30–15–1 or Section 66–3–506 violates the Equal Protection Clause. Defendant relies on *State v. Chavez,* 77 N.M. 79, 419 P.2d 456 (1966), in which the Supreme Court affirmed the defendant's conviction under a statute prohibiting trafficking in narcotic drugs, NMSA 1953, Repl.Vol. 8, pt. 2, § 54–7–14 (1962). The defendant in *Chavez* claimed that under the general/specific rule he could only have been prosecuted under a specific statute prohibiting trafficking in marijuana, NMSA 1953, Repl.Vol. 8, pt. 2, § 54–5–14 (1962). Proof of sale of marijuana would sustain a conviction under either statute, but lead to different penalties. *Chavez,* 77 N.M. at 82, 419 P.2d at 458. By considering legislative history, the Court determined that the legislature intended the general statute to be controlling. *Id.* The *Chavez* Court also stated:

> In *Aragon v. Cox,* [75 N.M. 537, 407 P.2d 673 (1965)] supra we concluded that where both statutes condemn certain conduct the state has a choice in selecting the statute to be employed in a prosecution for violation. We no longer subscribe to that view which would permit the law enforcement authorities to subject one person to the possibility of a greater punishment than another who has committed an identical act. This would do violence to the equal protection clauses of our state and federal constitutions.

*Id.*

15. The *Chavez* Court cited *State v. Pirkey,* 203 Or. 697, 281 P.2d 698 (1955) (en banc), which was later overruled. *See City of*

*Klamath Falls v. Winters,* 289 Or. 757, 619 P.2d 217 (1980) (determining that *Pirkey* was overruled by *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)). *Pirkey* involved a statute making it an offense to draw a bank check with insufficient funds, willfully and with intent to defraud. The statute provided that this offense could be prosecuted either as a misdemeanor or as a felony, in the discretion of the grand jury or magistrate. *Pirkey,* 281 P.2d at 699–700. The statute provided no criterion by which to determine whether to charge a felony or a misdemeanor. *Id.* at 702. The *Pirkey* court held that the statute was unconstitutional. *Id.* at 703.

16. Thus, in both *Pirkey* and *Chavez,* proof of the same elements would sustain convictions leading to different penalties. In the case on appeal, however, conviction of a fourth degree felony under Section 30–15–1 would require proof that the amount of damage exceeded $1000, while conviction under Section 66–3–506 would require proof of damage to a motor vehicle. Since the elements to be proved under the two statutes are not the same, we are not convinced that *Chavez* applies to the case on appeal.

17. Defendant raises a complicated issue but, unfortunately, does not discuss it in depth. This question has also been addressed in *State v. Wilson,* 116 N.M. 793, 799, 867 P.2d 1175, 1181 (1994), *Incorporated County of Los Alamos v. Montoya,* 108 N.M. 361, 772 P.2d 891 (Ct.App.), *cert. denied,* 108 N.M. 273, 771 P.2d 981 (1989), and by the United States Supreme Court in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Defendant does not discuss these cases. The State did not file a reply brief and therefore did not answer the equal protection argument raised in Defendant's brief.

18. In *Batchelder,* Justice Marshall, writing for a unanimous court, held that discretion to prosecute under either of two statutes prohibiting convicted felons from receiving firearms did not violate the Equal Protection Clause. 442 U.S. at 123–24, 99 S.Ct. at 2203–04. The two statutes required identical elements of proof but established different maximum penalties. *Id.* at 116–17, 99 S.Ct. at

2200–2201. The Court stated, however, that selective enforcement on a constitutionally impermissible basis would constitute an equal protection violation. *Id.* at 124–25, 99 S.Ct. at 2204–05.

19. Although apparently a majority of jurisdictions have followed *Batchelder,* we are governed by the precedents of our Supreme Court. *Montoya,* 108 N.M. at 366, 772 P.2d at 896; *see Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). Our Supreme Court has not addressed the effect of *Batchelder* on *State v. Chavez,* 77 N.M. 79, 419 P.2d 456 (1966), nor how broadly *Chavez* is to apply.

20. We assume that, under federal constitutional law, the mere existence of alternative means of prosecution like Section 30–15–1 and Section 66–3–506 does not violate equal protection. Defendant makes no allegation that prosecutorial discretion was exercised discriminatorily in her case. Without a showing of discrimination on an impermissible basis, Defendant has not made out an equal protection violation under federal law. *See Montoya,* 108 N.M. at 366–67, 772 P.2d at 896–97. Nor has Defendant shown an equal protection violation under state law. *See id.* Since she has made no showing of discriminatory prosecution in her case, she has not demonstrated that her constitutional rights have been affected. *See id.*

## III. CONCLUSION

21. The general/specific rule is inapplicable to the case on appeal. We reverse the district court's dismissal of the amended criminal complaint charging Defendant with criminal damage to property and remand for proceedings consistent with this opinion.

22. **IT IS SO ORDERED.**

HARTZ, C.J., and ALARID, J., concur.