1999-NMCA-012

971 P.2d 846

**Robert LARA, Plaintiff–Appellant,**

v.

**CITY OF ALBUQUERQUE, et al., Defendants–Appellees.**

**No. 18,144.**

Court of Appeals of New Mexico.

Oct. 27, 1998.

Paul Livingston, Albuquerque, for Appellant.

Robert M. White, City Attorney, Charles W. Kolberg, Assistant City Attorney, Albuquerque, for Appellees.

## OPINION

APODACA, J.

{1} Plaintiff (Employee) appeals the dismissal of his administrative grievance proceeding challenging the propriety of his termination by Defendant City of Albuquerque (the City). The City's Personnel Board dismissed the grievance proceeding because Employee did not comply with the hearing officer's order to provide for the release of certain medical records. Employee raises six issues on appeal: (1) the City had no real need for Employee's confidential records because they did not form the basis of Employee's termination; (2) the hearing officer did not have the authority and power to order disclosure of the medical records; (3) the records were confidential medical records;

(4) the psychotherapist-patient privilege protected the records from disclosure; (5) the City represented that the records were highly confidential; and (6) the dismissal violated Employee's right to procedural due process because the Personnel Board relied on secret, ex parte communications with the City's attorney. We determine that the hearing officer's discovery order was too broad and therefore reverse and remand for further proceedings and a hearing before the hearing officer, if necessary, consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Employee worked for the City. Pursuant to Employee's voluntary agreement to participate in the City's Employee Assistance Program (Program), Employee's therapist allegedly ordered Employee to report for a drug test. In August 1994, the City terminated Employee's employment because he failed to report for the test. Under the City's civil service system, Employee requested a Personnel Board hearing to protest his termination.

{3} Prior to a hearing, the City filed a motion to compel Employee to provide a signed medical release form allowing the City to access his drug test results and certain agreements between Employee and the City or the Program. The motion also requested Employee's consent for the City to speak with Employee's therapist. Employee's opposition brief contested the authority and jurisdiction of the hearing officer and Personnel Board to compel Employee's consent to release confidential treatment records. In October 1994, the Personnel Board held a hearing concerning the City's motion to compel.

{4} At the hearing, the City claimed that it needed copies of Employee's self-referral agreements. The City believed that these agreements provided consent for participation in the Program, including drug testing and possible termination for a positive test result. The City stated that it requested a medical release only because the agreements were located in Employee's counseling file with the Program. Employee asserted that the psychotherapist-patient privilege and rules of confidentiality protected the agreements.

{5} The hearing officer granted the motion to compel, determining that the records were relevant and did not invoke the psychotherapist-patient privilege. Employee stated that he would not agree to produce the documents. The hearing officer announced that he would not schedule a hearing until Employee complied with his order and that he would not recommend any back pay for the period of delay caused by Employee's failure to comply. The hearing officer informed Employee that Employee could get copies of the self-referral agreements from the counselor. Employee could give them to the City rather than execute a limited medical release for the documents. Employee argued that a more appropriate procedure for release was to order the City to produce the records. The hearing officer signed an order compelling Employee to release the records.

{6} In December 1994, Employee moved for reconsideration of the order. To verify which documents should be released to the City, the City suggested an in camera hearing of Employee's file. Employee declined. The hearing officer stated he would recommend to the Personnel Board that the grievance proceeding be dismissed unless Employee complied with the order within five days. The hearing officer submitted his recommendation for dismissal, and the Personnel Board consulted a city attorney. The Personnel Board voted to accept the recommendation to dismiss the grievance proceeding with prejudice. Employee appealed the Personnel Board's decision to the district court, and the district court affirmed.

## II. DISCUSSION

### A. Standard Of Review

{7} We review the Personnel Board's decision on the whole record for arbitrariness, capriciousness, fraud or lack of substantial evidence or otherwise contrary to law. *See Zamora v. Village of Ruidoso Downs*, 120 N.M. 778, 784, 907 P.2d 182, 188 (1995). This opinion evaluates the relevancy of the ordered records, application of the

psychotherapist-patient privilege, and confidentiality. We then consider dismissal of Employee's grievance proceeding in light of our analysis. Because relevancy, privilege, and confidentiality prescribe reversal in part, we do not reach Employee's due process issue.

### B. Relevancy

■ {8} Employee argues that the City did not need access to his Program records and therapist. He contends that nothing in the records could influence the legal meaning of failure to report for a drug test. The City, on the other hand, claims that the self-referral agreements are relevant to Employee's consent for drug testing upon the request of his therapist. The City contends that it terminated Employee because his therapist reported that he failed to appear for a drug test required by the Program. According to the City, Employee questioned the therapist's statement concerning the required drug testing by challenging his termination in the grievance proceeding.

{9} The hearing officer ordered Employee to "cause[ ] the release" of the following documents:

1. laboratory reports reflecting substance abuse testing results,

2. any self referral agreements reflecting his enrollment in the Employee Assistance Program,

3. any consent forms which he provided for drug/alcohol testing or the results of those tests, and

4. any other documents, other than counseling notes or treatment records, which reflect [Employee's] enrollment in a contractual relationship with the Employee Assistance Program concerning drug/alcohol testing and the release of drug/alcohol test results.

{10} We agree with Employee that this order may discover some irrelevant information. For example, the requested documents may contain information about frequency and type of drug use, use on the job, and effects of use on family and work life. Yet, we agree with the City that Employee's grievance of his termination made some terms of his employment an issue. The information relevant to Employee's grievance is his obligation to submit to random drug testing, his failure to report for the test, and the resulting consequences. On remand, after a hearing, if deemed necessary by the hearing officer, the order should be tailored narrowly to reach only such information.

### C. Scope Of The Psychotherapist–Patient Privilege

■ {11} New Mexico's psychotherapist-patient privilege provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, including drug addiction, among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Rule 11–504(B) NMRA 1998.

■ {12} The psychotherapist-patient privilege serves important private and public interests. *See Jaffee v. Redmond,* 518 U.S. 1, 10–12, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (discussing the rationale behind, and adopting a federal psychotherapist-patient privilege). Effective psychotherapy requires trust and confidence so that the patient can frankly and completely disclose "facts, emotions, memories and fears." *Id.* at 10, 116 S.Ct. 1923. Because of the sensitive nature of the patient's problems, "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* By facilitating treatment of mental and emotional problems, the psychotherapist privilege serves the public interest. *See id.* at 11, 116 S.Ct. 1923.

{13} Similar to our relevancy analysis, we hold that the hearing officer's discovery order infringes on some material protected by the psychotherapist-patient privilege. As noted previously, the requested documents may contain information concerning frequency or type of use, use on the job, and effects on family and work. In this case, we consid-

er this kind of information to be a confidential communication made for purposes of diagnosis or treatment. *See* Rule 11–504(B).

■ {14} In contrast, information concerning Employee's obligation to submit to random drug testing, his failure to report for the test, and the resulting consequences does not invoke the psychotherapist-patient privilege. It is not a confidential communication made for purposes of diagnosis or treatment of Employee's condition. *See id.* Rather, we believe this information concerns the terms of Employee's employment. Given our determination concerning the proper reach of the discovery order, we need not reach the parties' waiver arguments on the privilege.

### D. Confidentiality

■ {15} Employee argues that confidentiality precludes discovery of the agreements that he signed concerning his participation in the Program. He states that the Program assured him that it considered matters addressed in and records from his treatment program highly confidential. For example, the Program's information sheet states that "[a]ll Employee Assistance Program records are kept strictly confidential. No records will be included in personnel files. The EAP staff will follow appropriate regulations regarding confidentiality issues. Every effort will be made to avoid undue invasion of privacy."

{16} Employee, however, has not pointed to any promise of confidentiality concerning the agreement to submit to drug testing and the resulting employment consequences for failure to do so. As a result, we determine that information providing an obligation to submit to drug testing, the ensuing consequences, and Employee's failure to appear as required are not confidential. To hold otherwise would render such an agreement unenforceable. The City's confidentiality provisions, such as the one we quoted above, preclude its use of information in the Program file other than violations of the Program to justify termination. Consequently, our confidentiality analysis reinforces narrowing the scope of the discovery order on remand.

### E. The Hearing Officer's Power And Authority To Order Disclosure

■ {17} Because we hold that the hearing officer's discovery order was too broad, the Personnel Board erred in dismissing Employee's grievance. On remand, the hearing officer should tailor the discovery order as outlined in the previous sections. Prior to disclosure of the information to the City, the hearing officer should review the material in camera to prevent the release of irrelevant, privileged, and confidential information.

{18} For additional guidance on remand, we proceed to discuss the hearing officer's power and authority to compel discovery. Employee argues that the hearing officer does not have the power to dismiss a case for failure to produce evidence because no legal authority provides the hearing officer with the means to enforce a discovery order. Conversely, the City argues that the Personnel Board has the power to order discovery sanctions because legal authority does not preclude the Board from having quasi-judicial power.

■ {19} Article X, Section 6(D) of the New Mexico Constitution provides that "[a] municipality [that] adopts a charter may exercise all legislative powers and perform all functions not expressly denied by general law or charter." As a home rule municipality, the City has the power to enact ordinances not expressly denied by general law or charter. *See City of Albuquerque v. Chavez,* 91 N.M. 559, 559, 577 P.2d 457, 457 (Ct.App. 1978).

{20} The Albuquerque City Council legislated a civil service with a personnel board to hear certain employee grievances. *See* Albuquerque, N.M., Rev. Ordinances ch. 3, art. 1, §§ 3–1–4 to –5 (1994). The City, through the Personnel Board, adopted procedural rules governing grievance hearings. Rule 6(A) provides that, "[u]pon written request by any party, the hearing officer shall order either party to produce for inspection and copying any relevant records, papers, documents, or other tangible evidence in the possession of or available to that party." Albuquerque, N.M., Personnel Board Rules of Procedure

for Class I Grievance Hearings, Rule 6 (Discovery) (January 10, 1995).

{21} We believe that the Personnel Board's ability to provide discovery sanctions is consistent both with the mandatory nature of the discovery rules the Personnel Board has promulgated and with the purpose and construction of the municipal home rule. *See* N.M. Const. art. X, § 6(E) ("The purpose of [the municipal home rule] is to provide for maximum local self-government. A liberal construction shall be given to the powers of the municipalities."); *State ex rel. Haynes v. Bonem,* 114 N.M. 627, 631, 845 P.2d 150, 154 (1992). Additionally, the City correctly notes that neither general law nor charter denies the Personnel Board this power.

{22} We agree with Employee, however, that dismissal is an extreme sanction that the Personnel Board should not have employed in this case. *See State v. Bartlett,* 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct.App.1990) ("[D]ismissal is an extreme sanction to be used only in exceptional cases."). The hearing officer should have considered alternative measures to compel the discoverable information. *See id.*

### III. CONCLUSION

{23} The Personnel Board has the authority to order discovery sanctions, but dismissal in this case was inappropriate. We conclude that the hearing officer's order in this appeal likely would have reached irrelevant, privileged, or confidential information. On remand, after a hearing, if deemed necessary by the hearing officer, the order should be narrowed to comprise only Employee's obligation to submit to random drug testing, the consequences for failure to do so and for his failure to appear as requested.

{24} **IT IS SO ORDERED.**

BUSTAMANTE and ARMIJO, JJ., concur.